(50 App. Div. 562.)

### HAUG v. SCHUMACHER et al.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

1. WILLS—CONSTRUCTION—LANDS—REMAINDER—WHEN VESTED.

Where testator gave one-third of the rents and profits of his lands to his wife for life or until her remarriage, the remaining two-thirds to his two sons equally, and on the wife's death or remarriage all the rents and profits to go to the sons, and after the death of the wife and his

sons all his estate, real and personal, to go to all his grandchildren equally, per capita, the fee vested in the grandchildren at testator's death, although the possession was not to be enjoyed by them till later; and hence there was no suspension of the power of alienation which would invalidate the will.

2. SAME—CONSTRUCTION—PERSONAL PROPERTY—DISPOSAL.

Where one clause in a will gave and bequeathed the income and profits of the rest, residue, and remainder of testator's lands to his wife and two sons for life, and another clause devised and bequeathed all his estate, real and personal, to his grandchildren on the death of his wife and sons, the former clause will be held to dispose of the income from the personal property, although the same was not specifically mentioned.

Appeal from special term, New York county.

Action by Christian Charles Haug, executor of John C. Haug, against Henry J. Schumacher, a co-executor, and others. From a judgment by the special term construing a will (59 N. Y. Supp. 1056), defendants appeal. Modified.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Alfred G. Reeves, R. G. Babbage, and Abel Crook (A. Oldrin Salter, on the brief), for appellants.

E. Gaston Higginbotham, for respondent.

WOODWARD, J. This action was brought for the purpose of construing the last will and testament of John C. Haug, deceased, which was duly admitted to probate as a will of both real and personal property. There is no dispute as to the first, second, third, fourth, and fifth clauses; and it is conceded by all parties that the sixth clause is void because it undertakes to suspend the power of alienation for a period beyond the limits fixed by the statutes. It is, however, conceded that the sixth clause is not a material element of the will, and that it may be dropped from consideration, except in so far as it has a bearing upon the question of the testator's intention. This leaves the seventh, eighth, ninth, and tenth clauses to be construed,—the important questions, for the most part, arising under the ninth clause; the learned court below holding that the future estates provided in that clause were contingent, or, at least, not absolutely vested in persons in being at the time of testator's death, so that decedent died intestate as to his residuary personalty. From the judgment entered upon this construction of the will, appeal comes to this court.

So much of the will as is necessary to be here considered reads as follows:

"Seventh. I give and bequeath the equal one-third part of all the income, rents, issues, and profits of all the rest, residue, and remainder of my lands and real estate, of what nature and kind soever, and whatever the same may be at the time of my death, to my wife, Walburga Haug, for and during the term of her natural life, or so long as she shall remain my widow and not marry again, in lieu of dower. The remaining equal two-thirds of the income, rents, issues, and profits of my said lands and real estate I give and bequeath to my two sons, Frederick Ludwig Haug and Christian Charles Haug, to be divided among them equally, share and share alike. Eighth. Immediately upon the death of my said wife or her remarriage, whichever event shall first happen, I give and bequeath all the income, rents, issues, and prof-

its of my said lands and real estate to my two sons, Frederick Ludwig Haug and Christian Charles Haug, to be divided among them equally, share and share alike. Ninth. Immediately after the death of my said wife and the death of my said two sons, Frederick Ludwig Haug and Christian Charles Haug, I give, devise, and bequeath all of my said estate, real and personal, to all my grandchildren, to be divided among them equally, share and share alike, per capita, not per stirpes. Tenth. I hereby authorize and empower my executors to rebuild any of the buildings now standing upon any of my lands, and which may become destroyed or dilapidated by fire or otherwise, and to use and employ any moneys or funds that may be in their hands, belonging to my estate, for the purpose of such rebuilding. Lastly. I nominate, constitute, and appoint my two sons, Frederick Ludwig Haug and Christian Charles Haug, and my friend Henry J. Schumacher, executors of this, my last will and testament. Should the said Henry J. Schumacher die before the final settlement of my estate, then immediately upon his death I nominate, constitute, and appoint his brother, Samuel Schumacher, to be executor in his place and stead."

Having in mind that fundamental rule in the construction of wills, that the intent of the testator must be sought for and followed, in so far as it does not run counter to the laws of the state, it is important to consider the scheme which the testator evidently had in mind, and, in so far as possible, to give effect to that scheme. It is no part of the duty of the court to be astute in discovering technical defects in language, or to give forced construction to that which is used, but, rather, to seek to harmonize the language with the intent of the testator, which must always be presumed to be the disposition of all his property. That is the object of making a will, and the courts will ever seek to fulfill the purpose of the testator. At the time of the death of John C. Haug, whose last will and testament is now before this court, he was survived by his widow, Walburga Haug, defendant; by Christian Charles Haug, plaintiff, who has been married about 18 years, but who was without children, though his wife is still living; by Frederick Ludwig Haug, defendant, who had four children, the youngest two years of age (his wife still living); and by John Walther Hildenbrand, defendant, who is the only son of testator's deceased daughter, Louisa Hildenbrand. It is apparent from a reading of the will that the testator intended to keep his real estate as the basis of a revenue, which should be divided into three equal parts, one to go to his widow during her natural lifetime or until she should remarry, in either of which events the revenue was to be divided equally between his two sons; and when they should die the entire estate, both real and personal, was to pass to all the testator's grandchildren, per capita, nor per stirpes. The sixth clause of the will, which directed that "none of my real estate shall be sold until after the death of my said wife and my two sons," is undoubtedly contrary to law (section 32, Real Property Law); but, as this portion of the will is not essential to the carrying out of the substantial will of the testator, it need not be further considered.

In the view we take of this question, there is no suspension of the power of alienation. There are persons in being who may convey an absolute fee in possession, and there are only two life estates intervening between the testator and his grandchildren. The rule is well settled in this state that a remainder is not to be considered contingent in any case where, consistently with the intention of the

testator, it may be construed as being vested. Words or phrases denoting time, such as "when," "then," and "from and after," in a devise of a remainder, limited upon a particular estate, determinable on an event which must necessarily happen, are construed to relate merely to the time of the enjoyment of the estate, and not to the time of its vesting. Hersee v. Simpson, 154 N. Y. 496, 500, 48 N. E. 890, and cases cited. Moreover, the general policy of the law favors a construction which includes the vesting of estates, and consequent certainty in respect to the title to property, and which prevents the disinheritance of the issue of a remainder-man who may die during the existence of the precedent estate. This principle is based upon the idea that, in the absence of express words, it cannot be supposed that such was the intent. Hersee v. Simpson, supra. It seems clear to us that the testator intended that his real estate should remain intact so long as it produced the shares of income provided in the will, and that, when the widow should die or remarry, the share which had been provided for her use should be divided equally between the two sons, while upon the death of either of the sons the interest in the estate passed directly to the grandchildren, instead of to the surviving brother. See Vanderpoel v. Loew, 112 N. Y. 167, 178, 179, 19 N. E. 481. There were two life estates created by the will. One of these was to the widow, and the other to the sons of the testator. And the grandchildren in being at the time of testator's death took a vested interest in the remainders. On the death of the widow and either one of the sons, the grandchildren of the testator who were in being at the time of the testator's death would come into the possession of one half of the estate, and upon the death of the remaining son the other half of the estate would come into the possession of the grandchildren. While it is possible, under the terms of the will, that after-born grandchildren might have rights in the distribution of the estate, there can be no reasonable doubt that it was the intention of the testator to give his grandchildren a vested interest in his estate, and that the infant defendants in this action came into the legal right to share in the distribution of the testator's estate at the moment of his death; the time of its enjoyment to depend upon contingencies which were certain to happen. This being the legal effect of the will, it follows that there are, and at all times have been, persons in being who had the absolute power of alienation; and the will, in so far as it is necessary for the substantial carrying out of the intent of the testator, is not, therefore, in conflict with the provisions of the real property law. "Assuming, for the purposes of this case," say the court in Re Brown, 154 N. Y. 313, 326, 48 N. E. 537, 540, "that at the time of the execution of the will the gift to the grandchildren was to a class, it does not necessarily follow that their estates did not vest, as tenants in common, upon the decease of the testator; for, in the absence of a different intention disclosed in the will, the class will be ascertained and determined as of the death of the testator,"—quoting Schouler, Wills, § 529:

"Our law, instead of supposing that a gift to objects thus brought together should include, naturally, all that class who may fulfill the description at any time, presumes, rather, that the testator intended the class to be ascertained.

upon his death, and neither earlier nor later. Hence a devise or bequest to children of A. or of the testator means, prima facie, to those of that class in existence at the time of the testator's death, provided there be any at all to answer that description: and this rule extends to grandchildren, issue, brothers, nephews, and cousins."

In section 530 the same authority continues:

"Hence the English rule, confirmed by many American precedents, that the devise or bequest of a corpus or aggregate fund to children as a class, where the gift is not immediate, vests in all the children in existence at the testator's death, but so as to open and let in any who may come into existence afterwards, at any time before the 'fund is distributable. And this rule of construction, like the former one, extends its favor to grandchildren, issue, brothers, nephews, and cousins."

2 Jarm. Wills (6th Ed.) 168, lays down the same rule, and the law upon this question is too well established to need further citation of authority. In re Brown, supra, and cases there cited.

There is no express trust created by the will, giving title to the executors of the realty or the personalty; and, as all the beneficial purposes of the will may be effectuated without it, there is no reason to imply a trust. Greene v. Greene, 125 N. Y. 506, 26 N. E. 739. Holding, as we do, that the grandchildren took a vested interest in the estate at the death of testator, we are of opinion that there were at all times persons in being who had the absolute ownership of the personalty; that within the authority of Sawyer v. Cubby, 146 N. Y. 192, 196, 40 N. E. 869, there was no time when a good title in present possession might not have been given to the legacy and the property covered by it. It is only necessary, then, to give complete practical effect to the will of the testator, to read into the seventh and eighth clauses provisions in harmony with the ninth clause, and not inconsistent with the language used. We think the testator, in the seventh and eighth clauses, intended to dispose of both his real and personal property. The language is:

"I give and bequeath the equal one-third part of all the income, rents, issues, and profits of all the rest, residue, and remainder of my lands and real estate, of what nature and kind soever, and whatever the same may be at the time of my death, to my wife, Walburga Haug," etc.

This language is most comprehensive, if the testator intended no more than a disposition of the income of his real estate. It is language usually employed in disposing of the entire estate, and in view of the provisions of the ninth clause, in which the testator gives, devises, and bequeaths "all of my said estate, real and personal, to all of my grandchildren," to be divided share and share alike, we reach the conclusion that the testator intended to dispose of the income of all his property, both real and personal, during the lives of his wife and the two sons, with remainders over to the grandchildren, who took vested interests at the time of his death, and who will come into the enjoyment of one half of the property upon the death of the widow or her remarriage, and the death of either of the sons, while the other half will go to the grandchildren upon the death of the other son. It is within the scope of the powers of this court to amend the language of the will for the purpose of giving effect to the intent of the testator. Roe v. Vingut, 117 N. Y. 204,

214, 22 N. E. 933. And, as it is the duty of this court to give to the will the construction which presumes that the testator intended to dispose of his entire property (Clark v. Cammann, 160 N. Y. 315, 324, 54 N. E. 709), we have arrived at the conclusion that the executors should be directed to give this effect to the will.

The judgment appealed from should be modified in accordance with this opinion, and, as so modified, should be affirmed; costs to all parties payable out of the estate. All concur, except BART-LETT, J., who was absent.