[S. F. No. 6883. In Bank.—November 29, 1916.]

## N. DE FOREST SMITH et al., Respondents, v. ELLA R. DOOLEY SMITH, Appellant.

DEEDS—DELIVERY IN ESCROW UNTIL GRANTOR'S DEATH—SUFFICIENCY OF EVIDENCE.—Where deeds to the grantor's sons were delivered by him to his attorney, who testified that the former consulted him, stating the wish that his sons should have in equal portions his property but that he might live there during the rest of his lifetime, and that under instructions he, the attorney, prepared the deeds, making what seemed to the grantor a just division of the land, but before the manual tradition of the instruments from the grantor to the attorney, the latter explained to the former what was necessary to constitute a good delivery in escrow in the full legal sense, telling him that he must surrender all control of the documents, and that he would have no power to withdraw them or otherwise command their disposal, and the deeds then being delivered to the attorney by the grantor with a letter signed by the grantor and stating: "I herewith deliver to you two deeds, one to each of my sons, N. D. Smith and G. C. Smith, and direct that you keep and hold the same in escrow during my lifetime, and upon my death, deliver them to N. D. Smith and G. C. Smith so that they may then take effect," the testimony and letter of instructions were ample to show a valid delivery of the deeds.

ID.—ACTION TO QUIET TITLE—SUFFICIENCY OF EVIDENCE.—In an action by the grantees in such deeds against one who married the grantor after their execution, and who thereafter received a deed herself to the lands from her husband, findings in favor of the plaintiffs will not be disturbed on appeal where the evidence was conflicting but sufficient to support the conclusion that a delivery had taken place, although actions of the grantor after the deposit of the deeds with his attorney might indicate either that he did not intend to deliver them or place them beyond his power of recall, or that he had forgotten his transaction with the attorney.

ID.—CONSTRUCTION OF INSTRUCTIONS.—In the words contained in the written directions to the attorney, "upon my death *deliver* them"

(the deeds), and "so that they may then take effect," there was nothing to prevent the present passing of title at the time of giving the deeds to the attorney, if the intention of the grantor was that it should then pass; and the court was justified in deciding that the word "deliver" used in the latter part of the writing was employed in its general meaning "transmit," and that the expression "then take effect" referred not to investing of title, but to the time of enjoyment.

ID.—EVIDENCE—ADMISSIBILITY OF ORAL EVIDENCE OF CIRCUMSTANCES OF PREPARING DEEDS.—Where the written instructions did not purport to be all of the directions given, oral testimony of the occurrences and circumstances surrounding the preparation of the deeds and the passing of them by the grantor to the attorney was admissible. The letter does not come under the rule that a written contract may not be altered by oral testimony.

ID. — EVIDENCE — PARTING WITH TITLE—DELIVERY—ADMISSIBILITY OF ACTS AND STATEMENTS.—Where the very question is whether or not the alleged grantor has parted with his title by making an efficient delivery of his deed, his acts and statements material to the question of delivery during the entire period of escrow may be proven.

ID.—ADMISSIBILITY OF ATTORNEY'S TESTIMONY.—There is no force in the objection that because of his status as attorney for the grantor, the latter might not occupy the position of the "third person" to whom a deed might be delivered in escrow for another grantee.

ID.—KNOWLEDGE OF PRIOR GRANT—SUFFICIENCY OF EVIDENCE.—The testimony of an attorney who drew the deed for the grantor in favor of the latter's wife that the wife was informed of the prior deeds in escrow at the time she received her deed is sufficient to support findings to that effect, although she denied such knowledge.

ID.—CONVERSATIONS IN PRESENCE OF ONE HARD OF HEARING—ABILITY TO HEAR—DETERMINATION OF TRIAL COURT CONCLUSIVE.—Whether or not alleged conversations in the presence of one hard of hearing occurred and whether they were heard by the party or not are matters to be decided by the trial court, and its determination thereof upon conflicting evidence will not be disturbed upon appeal.

ID.—STATEMENTS TO ATTORNEY—WHEN NOT PRIVILEGED.—The contention that communications made by the husband and wife to the attorney who drew the deed in favor of the latter, at the time the deed was drawn, are privileged, cannot be maintained, where there is no proof that he was acting for the wife, he being employed by the husband and acting under his orders. The rule of privilege applying where an attorney acts for a husband and wife operates only against strangers, and the sons claiming title under the deeds which had been placed in escrow were not within that category.

ID.—FAILURE TO FIND UPON CERTAIN ISSUES—WHEN UNNECESSARY.— In such a case the failure to find upon the issue of the grantor's

mental condition at the time of executing the prior deeds, upon the matter of alleged unfair advantage over the grantor by the defendant, upon the question of consideration for the deed to the defendant, upon the motives of defendant in marrying the grantor, and upon the subject of the alleged plan to obtain the property by evil designs, is not material in view of a judgment that there had been a valid delivery of the deeds to plaintiffs in escrow and that defendant had full knowledge of that transaction, as this determination controlled the judgment.

ID.—APPEAL—WHEN JUDGMENT NOT REVERSIBLE.—A judgment will not be reversed on appeal because of failure to make findings which would not necessitate a different judgment even if they were made and entered in the appellant's favor.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. J. R. Welch, Judge.

The facts are stated in the opinion of the court.

George W. Waldorf, and R. M. Wright, for Appellant.

Charles M. Cassin, and James L. Atteridge, for Respondents.

MELVIN, J.—Defendant appeals from a judgment against her and from an order denying her motion for a new trial.

The action had reference to a certain tract of land in the county of Santa Clara. On the 19th of October, 1907, Uriah Smith owned this property in fee simple. On that day he made two deeds purporting to convey the title to his two sons, N. De Forest Smith and Grove C. Smith. These deeds were delivered to B. Grant Taylor, Esq., his attorney, with written instructions as follows:

"Saratoga, California, Oct. 19, 1907.
"Mr. B. Grant Taylor,
    "Attorney-at-law,
        "Saratoga, California.
"Dear Sir:
"I herewith deliver to you two deeds, one to each of my sons, N. D. Smith and G. C. Smith, and direct that you keep and hold the same in escrow during my lifetime, and upon my death deliver them to N. D. Smith and G. C. Smith so that they may then take effect.
                                        "URIAH SMITH."

Mr. Taylor accepted the deeds and held them in his custody until after the death of Uriah Smith, which took place on the thirty-first day of July, 1911. Shortly thereafter he delivered the deeds to the grantees named therein, and by cross-conveyances they have fixed their ownership each of an undivided half interest in such title as passed by the original deeds.

Meanwhile the grantor, Uriah Smith, who was eighty-five years of age, had met and had proposed marriage to the defendant, then Mrs. Dooley, a woman many years his junior. On July 25, 1910, Uriah Smith deeded to Mrs. Dooley the greater part of the property described in the deeds which had been executed previously and delivered to Mr. Taylor. The old man and Mrs. Dooley were married on August 2, 1910, and on March 22, 1911, they separated.

The complaint states three causes of action. In the first are pleaded Uriah Smith's ownership of the property on October 19, 1907; the making and delivery in escrow of the two deeds to his sons; their ownership as tenants in common of the property; Uriah's unsoundness of mind at the time when he made the deed to Mrs. Dooley on July 25, 1910; and that by pretending great affection for him she took an unfair advantage and fraudulently induced him to make the deed to her. The court did not find upon the allegations of unsoundness of mind and undue influence. It was also set forth in the pleading of the first cause of action that prior to and at the time of the execution of the deed of July 25, 1910, from Uriah Smith to the defendant, she well knew of the execution and delivery in escrow of the conveyances to his sons.

The second cause of action was based upon a supposed conspiracy on the part of the defendant to marry the old man, Uriah Smith, and to quarrel with and annoy him for the purpose of securing a division of his property, and it is averred that in pursuance of this design she caused her husband to join in an instrument conveying this land to one Wright, who then executed two deeds, one purporting to convey the greater portion of it to Mrs. Smith and the other being in form a conveyance of the rest of the land to her husband. The court made no findings upon the issues raised under the second cause of action.

The third cause of action was one to quiet title, pleaded in the usual form, and the court found the allegations therein contained to be true.

By her answer defendant put in issue the material aver-ments of the complaint, and she filed a cross-complaint by which she sought to quiet title to the land.

Judgment was in favor of plaintiffs quieting their title and decreeing that they have and recover possession of the property.

Appellant's counsel insist that their demurrer to the complaint on the ground that several incompatible causes of action were joined therein should have been sustained, but as their argument is based almost entirely upon matters regarding which the court made no findings and pronounced no judgment, we need not consider it. Their argument relative to the alleged ambiguity and unintelligibility of the complaint may be similarly disposed of.

The most important attacks made upon the judgment of the superior court depend upon the contentions that the deeds from Uriah Smith to his sons are invalid, (1) as attempted testamentary disposition of the land and (2) as wanting valid delivery during the lifetime of the grantor. We are of the opinion that the finding of the court supporting as valid the delivery of the deeds to Mr. Taylor is amply sustained by the evidence. Mr. Taylor testified in substance that on the 19th of October, 1907, Mr. Smith consulted him, stating a wish that N. De Forest Smith and Grove C. Smith should have in equal portions the old man's property at Saratoga but that he might live there during the rest of his lifetime. Under his instructions Mr. Taylor prepared deeds making what seemed to the grantor a just division of the land and these, together with the written directions copied above in this opinion, were thereafter retained by the attorney. Before the manual tradition of these instruments from Mr. Smith to Mr. Taylor the latter explained to the grantor what was necessary to constitute a good delivery in escrow in the full legal sense, telling him that he must surrender all control over the documents, and that he would have no power thereafter to withdraw them or otherwise to command their disposal. We believe that this testimony and the letter of instruction are amply sufficient to establish the transaction as one falling within the rule announced in such cases as

*Moore* v. *Trott,* 156 Cal. 353, [134 Am. St. Rep. 131, 104 Pac. 578], *Bury* v. *Young,* 98 Cal. 446, [35 Am. St. Rep. 186, 33 Pac. 338], *Follmer* v. *Rohrer,* 158 Cal. 755, [112 Pac. 544], *Moore* v. *Trott,* 162 Cal. 268, [122 Pac. 462], *Husheon* v. *Kelley,* 162 Cal. 656, [124 Pac. 231], and *Bias* v. *Reed,* 169 Cal. 33–44, [145 Pac. 516]. It is true that some of the actions of Uriah Smith after the deposit of the deeds with Mr. Taylor might indicate either that he did not intend to deliver them and place them beyond his power of recall, or that the old man had forgotten the transaction with his attorney; but the finding of the court based upon conflicting testimony will not be disturbed if there is sufficient to support the conclusion that a delivery has taken place. The solution of the question of delivery or nondelivery in each case is based upon the intention of the grantor at the time of passing the deed to a third person. (*Williams* v. *Kidd,* 170 Cal. 631–639, [Ann. Cas. 1916E, 703, 151 Pac. 1] ; *Donahue* v. *Sweeney,* 171 Cal. 388–391, [153 Pac. 708] ; *Follmer* v. *Rohrer,* 158 Cal. 755, [112 Pac. 544] ; *Cox* v. *Schnerr,* 172 Cal. 371, [156 Pac. 509–514].)

Appellant places great stress upon the words contained in the written directions to Mr. Taylor: "Upon my death *deliver* them" (the deeds), and "so that they may then take effect." There is nothing in this language to prevent the present passing of title at the time of the giving of the deeds to Mr. Taylor, if the intention of the grantor was that it should then pass. Earlier in the letter of instruction Mr. Smith had used the technical language, "I herewith deliver to you two deeds." In view of all of the evidence the court was justified in deciding that the word "deliver," used in the latter part of the writing, was employed in its general sense, meaning "transmit," and that the expression, "then take effect," referred not to the vesting of title but to the time of enjoyment. (*Haug* v. *Schumacher,* 50 App. Div. 562, [64 N. Y. Supp. 310–313] ; *Middleton's Heirs* v. *Middleton's Devisees* (Ky.), 43 S. W. 677; *Newberry* v. *Hinman,* 49 Conn. 130–132; *Chambers* v. *Chambers,* 139 Ind. 111–119, [38 N. E. 334] ; *Dove* v. *Torr,* 128 Mass. 38–40.)

Appellant takes the position that the court erred in permitting oral testimony of the occurrences and circumstances surrounding the preparation of the deeds and the passing of them by Uriah Smith to Mr. Taylor. The course pursued was

entirely proper. The written instructions did not purport to be all of the directions given, and the letter does not come under the rule that a written contract may not be varied by oral testimony. Mr. Taylor's testimony was necessary to a full understanding and interpretation of the writing. It was properly admitted, therefore. (Code Civ. Proc., sec. 1860; *Clarke* v. *Eureka County Bank,* 123 Fed. 922–927.) This court has recently declared the rule that where the very question is whether or not the alleged grantor has parted with his title by making an efficient delivery of his deed, his acts and statements material to the question of delivery during the entire period of the escrow may be proven. (*Williams* v. *Kidd,* 170 Cal. 631–648, [Ann. Cas. 1916E, 703, 151 Pac. 1].)

There is no force in the suggestion that because of his status as Mr. Smith's attorney, Mr. Taylor might not occupy the position of the "third person" to whom a deed might be delivered in escrow for another grantee. In nearly all of the cases cited above, notably in *Bury* v. *Young,* the holder of the deeds was the attorney for the grantor, and we are aware of no rule of law disqualifying an attorney from assuming such a duty.

Appellant attacks as without real or material support the findings that at the time of the execution of the deed to her on July 25, 1910, she had knowledge of the deeds held in escrow by Mr. Taylor. It is true that she vigorously denied such knowledge, but the court's finding is supported by the testimony of Mr. J. H. Russell, an attorney at law, having an office in San Jose. Mr. Russell testified that Mr. Uriah Smith called upon him on July 24, 1910, and requested him to draw a deed in favor of Mrs. Dooley for the conveyance of the property here in dispute. On the following day he called again, accompanied by Mrs. Dooley. According to Mr. Russell's testimony, before the deed was executed he said to Mr. Smith: "You have already conveyed this property in escrow, have you not, and has that matter been straightened out so that you have the entire title?" Mr. Smith replied that the situation was just as it had been; that he had executed a deed in favor of his sons covering these properties; that these deeds were still in existence; and that they had never been annulled. Mrs. Dooley was present when this conversation between Uriah Smith and Mr. Russell took place.

Later, when Mr. Smith and Mrs. Dooley returned for the documents, the former told Mr. Russell that his sons would not, he believed, claim any right under the escrow deeds if Mrs. Dooley would carry out her contract to marry him and to care for him in his old age. The sons were not present at that time, but the conversation about the deeds, as we have said, occurred in Mrs. Dooley's presence. It is suggested that this notice was not sufficiently precise to put appellant upon her guard. We cannot see how it could have been more definite unless the deeds themselves had been exhibited to defendant. Here was information by her intended grantor that he had previously dispossessed himself of the title to the land which he was about to give to her.

There is a further suggestion that it does not affirmatively appear that Mrs. Dooley heard these conversations. She was quite deaf, but Mr. Russell testified that both he and the aged Uriah Smith were hard of hearing; that the conversations took place within a few feet of Mrs. Dooley, and that they were conducted in very loud tones. Whether or not the alleged conversations occurred and whether they were heard by defendant or not were matters to be decided by the superior court, and we will not disturb the adjudication of that tribunal based upon the conflicting testimony.

It is asserted also that Mr. Russell was attorney and common agent for both grantor and grantee named in the deed which he prepared, and that therefore the communications made to him when they were present were privileged so far as plaintiffs were concerned. There was no proof that Mr. Russell was acting for Mrs. Dooley. He was employed by Mr. Smith and acted under his orders. Nevertheless appellant contends that the statements of Mr. Russell come within the rule of privilege applying where, for example, an attorney acts for a husband and wife in preparing a declaration of homestead. (*In re Bauer,* 79 Cal. 304–312, [21 Pac. 759].) But that rule only operates against strangers. The sons claiming title under the deeds which have been placed in escrow were not within that category. "It is generally considered that the rule of privilege does not apply in litigation, after the client's death, between parties, all of whom claim under the client." (40 Cyc., p. 2380.) Among the citations supporting this text are *Kern* v. *Kern,* 154 Ind. 29, [55 N. E. 1004], *Phillips* v. *Chase,* 201 Mass. 444–448, [131

Am. St. Rep. 406, 87 N. E. 755], and *Glover* v. *Patten,* 165 U. S. 394–406, [41 L. Ed. 760, 17 Sup. Ct. Rep. 411].

It will be remembered that in the Bauer case the contest was between a son asserting title to property as an heir and his mother claiming under a homestead, and it was held that the statements of his father and mother, made to the attorney who prepared the declaration of homstead were not privileged. In *Murphy* v. *Waterhouse,* 113 Cal. 467–470, [54 Am. St. Rep. 365, 45 Pac. 866], Mr. Justice McFarland, after citing the rule announced in the Bauer case, used the following language: "The rule, however, is the same where the witness is attorney for only one of the contracting parties. Where two persons are negotiating with each other in the presence of the attorney of one of the parties, the very nature of the transaction, and the circumstances surrounding it, are inconsistent with the notion of a confidential communication between one of the parties and his attorney who happens to be present." In *Harris* v. *Harris,* 136 Cal. 384, [69 Pac. 23], the same rule was announced, and it was also followed in *Gerety* v. *O'Sheehan,* 9 Cal. App. 447–450, [99 Pac. 545]. The testimony of Mr. Russell was admissible, and was a sufficient basis for the finding that Mrs. Dooley took the deed from Uriah Smith with knowledge of the existence of the deeds to his sons.

The court failed to find upon certain issues, namely, upon Uriah Smith's mental condition in July, 1910; upon the matter of the alleged unfair advantage over the old man taken by defendant; upon the question of consideration for the deed to defendant; upon the motives of defendant in marrying Uriah Smith; and upon the subject of the alleged plan to obtain the property by evil designs. Findings upon these aspects of the litigation were not necessary in view of the judgment that there had been a valid delivery of the deeds to the plaintiffs in escrow and that defendant then had full knowledge of that transaction. The determination of the last-named issues controlled the judgment. This court will not reverse a judgment because of failure to make findings which would not necessitate a different judgment even if they were made and entered in the appellant's favor. (*Windhaus* v. *Bootz,* 92 Cal. 617–622, [28 Pac. 557]; *Southern Pacific R. R. Co.* v. *Dufour,* 95 Cal. 615–619, [19 L. R. A. 92, 30 Pac. 783]; *Merrill* v. *Merrill,* 102 Cal. 317–319, [36 Pac. 675];

*Morrison* v. *Stone,* 103 Cal. 94–97, [37 Pac. 142] ; *Gould* v. *Adams,* 108 Cal. 365–368, [41 Pac. 408] ; *Sewell* v. *Price,* 164 Cal. 265–271, [128 Pac. 407].)

The judgment and order are affirmed.

Henshaw, J., Sloss, J., Lawlor, J., Shaw, J., and Angellotti, C. J., concurred.