ESTATE OF PHILIP McRAE, LOUISE C. McRAE, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32303.   Promulgated June 29, 1934.

*Carey Van Fleet, Esq.*, for the petitioner.
*W. F. Wattles, Esq.*, and *Bernard D. Daniels, Esq.*, for the respondent.

#### OPINION.

SEAWELL: The respondent has determined a deficiency of $4,844 in estate tax on account of the estate of Philip McRae, who died July 12, 1925, at the age of 84.   The issues are whether there should be included as a part of the gross estate of decedent (1) the full value of community property and (2) the value of certain real property, notes, and stock as transfers made in contemplation of death or intended to take effect in possession or enjoyment at or after death.   The parties are in agreement as to the value of the property in dispute.

No evidence was offered concerning the first issue and it is not referred to in the petitioner's brief.   This Board and the courts have frequently held that the full value of community property of husband and wife, domiciled in California, the, state in which the decedent and his wife apparently were domiciled, must be returned in the gross estate of the deceased husband for estate tax purposes. *Griffith Henshaw, Executor*, 12 B.T.A. 1441; affd., 31 Fed. (2d) 946; certiorari denied, 280 U.S. 565; *Talcott v. United States*, 23 Fed. (2d) 897; certiorari denied, 277 U.S. 604; *Emma Melczer, Executrix*, 23 B.T.A. 124; petition to review dismissed, 63 Fed. (2d) 1010.   On this issue the respondent is sustained.

In determining the deficiency in dispute the respondent included as a part of the gross estate of the decedent the following assets, on the ground that the property was transferred by the decedent in

contemplation of death or intended to take effect in possession or enjoyment at or after death:

| Item No. | Property | Value |
|---|---|---|
| 1 | 320-acre ranch, Kings County, Calif. | $132,000.00 |
|  | Interest. | 4,224.00 |
| 2 | Lots 1-16, inclusive, block 205, Hanford, Calif. | 8,000.00 |
| 3 | " 17-32, " " " " " | 4,500.00 |
| 4 | Notes, Hanford Water Co. | 20,000.00 |
|  | Interest. | 256.39 |
| 5 | 143 shares stock Pacific Gas & Electric Co. | 14,139.13 |
| 6 | 40 " " Union Oil Co. | 1,507.50 |
|  | Total. | 184,627.02 |

By deeds executed on February 16, 1915, the decedent conveyed to his wife, the petitioner here as executrix of his estate, and his daughter Katherine C. McRae, now Mrs. Empey Robinson, respectively, as gifts, the ranch and lots referred to above as items 1 and 2 and the lots referred to in item 3. The respective grantees promptly placed the instruments of conveyance in a joint safe-deposit box of the grantor and his wife, where they remained until placed on record March 28, 1925.

During all of their married life the decedent and his wife maintained a joint checking account. All of the earnings of the decedent and the income derived from the operation of the ranch before and after February 16, 1915, were deposited in the joint account. The decedent delivered to his daughter Katherine the proceeds derived from the sale of walnuts grown on the lots conveyed to her.

The ranch was sold in 1921 on the installment basis. The first installment payment, amounting to $20,000, was invested in notes of the Hanford Water Co., Hanford, California, of which the decedent had been a director for many years. In about 1923 other payments made under the contract of sale were invested in stock of the Pacific Gas & Electric Co. and the Union Oil Co. The decedent delivered the notes and stock to his wife, who deposited them in the joint safe-deposit box with the deeds.

The uncontradicted testimony is that at all times important here the decedent was actively engaged in serving as a director of several corporations and looking after extensive business interests; that he traveled considerably; that he had no organic disease of any kind; that he was a vigorous man for his age; and that he was always cheerful, never depressed. His excellent health continued until about July 1, 1925, when, while on a visit at the home of his daughter, he suffered a cerebral hemorrhage, which caused his death about two weeks later. The last will and testament of the

decedent was executed in 1903, a considerable period prior to the time the transfers in question were made. The transfers were not testamentary in character and were not made in contemplation of death. *United States* v. *Wells*, 283 U.S. 102.

In 1892 the decedent promised his wife to give her the ranch if she would locate in California with him, and on several occasions prior to the execution of the deed therefor, he informed his daughter of his intention to give her the lots. After the deeds were executed and delivered the decedent frequently referred to the properties as belonging to his wife and daughter, respectively. The intention to give and the delivery of the deeds is satisfactorily proved by the evidence. Clearly there was an acceptance, for the deeds were held by the respective grantees for about ten years and then placed on record. The gifts were complete when the deeds were accepted *Sullivan* v. *Hess*, 203 Cal. 165; 263 Pac. 220; *McCarthy* v. *Security Trust & Savings Bank*, 188 Cal. 229; 204 Pac. 818; *Ruiz* v. *Dow*, 113 Cal. 490; 45 Pac. 867; *Frank G. Williams et al., Executors*, 25 B.T.A. 1078. The fact that the decedent paid taxes on the lots conveyed to his daughter is not important. *McCarthy* v. *Security Trust & Savings Bank, supra.* Any enjoyment the decedent may have had of the property thereafter was wholly at the sufferance of the grantees.

There was some discussion between the decedent and his wife concerning the purchase of the notes and stock with funds derived from the sale of the ranch, and from her testimony it appears that she was present at the time the stock of the Pacific Gas & Electric Co. was bought. The notes and stock of the Pacific Gas & Electric Co. were issued in favor of the decedent for reasons not explained in the record. The evidence does not show to whom the Union Oil Co. stock was issued. Counsel for the petitioner sought to prove by oral testimony of Mrs. McRae and her son-in-law, who assisted her in administering the estate, that the decedent endorsed all of the securities to his wife. We declined to receive such offer of proof of the fact in the absence of a showing that the notes and stock certificates, the best evidence on the point, could not be produced. Thus there is no proof that the decedent did not have absolute title to all of the securities at the time of his death. Under the circumstances, we find no error on the part of the respondent in including as a part of the decedent's gross estate the notes and stock at the values set forth above.

Reviewed by the Board.

*Decision will be entered under Rule 50.*