823 F.2d 198
 Bankr. L. Rep. P 71,864, 4 UCC Rep.Serv.2d 5
In re Paul V. ROLAIN, Debtor.
NORWEST BANK ST. PAUL, N.A., Plaintiff-Appellee,
v.
Edward W. BERGQUIST, Trustee of the Estate of Paul V.
Rolain, Defendant-Appellant.
 No. 86-5382.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 13, 1987.
Decided June 26, 1987.
 
 Mark P. Wine, Minneapolis, Minn., for defendant-appellant.
 Shannon M. O'Toole, St. Paul, Minn., for plaintiff-appellee.
 Before ARNOLD, JOHN R. GIBSON, and WRIGHT,* Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge.
 
 
 1
 We are asked to apply Minnesota law in this appeal arising from bankruptcy proceedings. The trustee in bankruptcy contends that the creditor bank has no perfected security interest in a negotiable instrument entrusted by the bank to an attorney agent. We find that there was a perfected security interest and affirm the judgment of the district court.
 
 
 2
 Norwest Bank loaned $163,000 to Rolain and a corporation of which he was president, United Wisconsin Properties. United Wisconsin executed a promissory note that was later partially guaranteed by United Corporations of Minnesota (UCM), its parent company. UCM's guarantee was secured by a note of one of its debtors, Owen. The Owen note was the collateral pledged by UCM to Norwest to secure the loan.
 
 
 3
 Norwest wished to perfect its security interest in the Owen note, which would require the bank or its agent to hold the document. Rolain was reluctant to let Norwest hold the note, however, because its terms were subject to a confidentiality agreement between himself and Owen. The parties agreed that the note would be held by Rolain's attorney, Mannikko, under a written agency agreement.
 
 
 4
 In November 1981, in consideration for Norwest extending the note's due date, UCM increased its guarantee of the note between Norwest and United Wisconsin. The agency agreement was amended accordingly. Rolain later filed for bankruptcy under Chapter VII and that proceeding was consolidated with those of the corporations owned by Rolain, including UCM and United Wisconsin.
 
 
 5
 Norwest moved in the bankruptcy court for a partial summary judgment that it had perfected its security interest in the Owen note. Bergquist, the trustee in bankruptcy, filed a cross-motion for summary judgment. The bankruptcy court granted the bank's motion and denied Bergquist's, and the district court affirmed.
 
 
 6
 We review summary judgment de novo. Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir.1986). Before summary judgment will issue, there must be no genuine issue of material fact. Fed.R.Civ.P. 56(c).
 
 
 7
 A trustee may avoid transfers or encumbrances on property of the bankrupt estate. 11 U.S.C. Sec. 544(a) (1982). The Code vests him with the rights of a bona fide purchaser of real property from the debtor or a creditor having a judicial lien or an unsatisfied execution. Id. The trustee's rights under section 544 are derivative. They are those of a creditor under state law. See In re Theisen, 45 B.R. 122, 127 (Bankr.Minn.1984); Matter of O.P.M. Leasing Serv., Inc., 46 B.R. 661, 669 (Bankr.S.D.N.Y.1985); see also 4 Collier on Bankruptcy p 544.02 at 544-8-9 (15th ed. 1987).
 
 
 8
 Here, the applicable law is Minn.Stat. Sec. 336.9-305:
 
 
 9
 When Possession By Secured Party Perfects Security Interest Without Filing.
 
 
 10
 A security interest in letters of credit and advice of credit ... goods, instruments (other than certificated securities), money, negotiable documents, or chattel paper may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest.
 
 
 11
 * * *
 
 Id. Comment 2 to this provision states:
 
 12
 [p]ossession may be by the secured party himself or by an agent on his behalf: it is of course clear, however, that the debtor or a person controlled by him cannot qualify as such an agent for the secured party....
 
 
 13
 The issue is whether Mannikko was under such control by Rolain that he could not serve as a bailee/agent under 9-305.
 
 
 14
 The leading case on the issue of bailee/agent possession is In re Copeland, 531 F.2d 1195 (3d Cir.1976). The court held that an escrow agent, acting for the benefit of both parties, was a "bailee with notice" within the meaning of 9-305 and that his possession perfected the creditor's security interest. Id. at 1203-04. Copeland and subsequent cases explained that the purpose of the perfection requirement is to give notice to all current and potential creditors that the property was being used as collateral and could not be repledged. See, e.g., id.; Ingersoll-Rand Financial Corp. v. Nunley, 671 F.2d 842, 844-45 (4th Cir.1982); Matter of O.P.M. Leasing Services, Inc. 46 B.R. 661, 670 (Bankr.S.D.N.Y.1985).
 
 
 15
 Copeland noted that if the debtor or "an individual closely associated" with him holds the collateral, this would not sufficiently alert prospective creditors that the debtor's property is encumbered. Copeland, 531 F.2d at 1204. However, the holder of the document need not be under the sole control of the creditor. "[P]ossession by a third party bailee, who is not controlled by the debtor, which adequately informs potential lenders of the possible existence of a perfected security interest" satisfies the notice requirements of Sec. 9-305. Id.
 
 
 16
 Once the parties have designated an agent with no interest in the collateral, In re Coral Petroleum, Inc., 50 B.R. 830, 839 (Bankr.Tex.1985), and the collateral is delivered to him, the debtor no longer has unfettered use of the collateral and the notice function of section 9-305 is served by the agent's possession. Copeland, 531 F.2d at 1203-04; Ingersoll-Rand, 671 F.2d at 845; see also 41 Bus.Law. at 1478 (1986) (noting that recent decisions allow escrow agents to serve as 9-305 bailees).
 
 
 17
 Mannikko is a third party who asserts no interest in the collateral. Because the Owen note was delivered to him under a written agency agreement, Rolain would not have unfettered use of it and could not repledge it. If he did so, his lack of possession would notify the third party creditor that the note was encumbered.
 
 
 18
 Bergquist argues that a debtor's attorney may never be a suitable bailee because the attorney-client relationship necessarily means that the attorney is under the control of the client. However, courts have held explicitly that attorneys may act as valid 9-305 agents. In O.P.M. Leasing, the debtor deposited money with its firm of lawyers to be held in escrow as security for performance under a lease contract. 46 B.R. at 664. The court found that the law firm was a valid bailee. Id. at 670; see also Barney v. Rigby Loan & Investment Co., 344 F.Supp. 694, 697 (D. Idaho 1972) (citing Henry v. Hutchins, 146 Minn. 381, 178 N.W. 807, 809 (Minn.1920)) for proposition that debtor's attorney may serve as bailee or pledge holder).
 
 
 19
 The lawyers' possession of the security served " 'to provide notice to prospective third party creditors that the debtor no longer has unfettered use of [his] collateral.' " O.P.M. Leasing, 46 B.R. at 670 (quoting Ingersoll-Rand, 671 F.2d at 844-45). Because the debtor's attorneys had their client's consent and were acting as a fiduciary to the secured creditor, they were bound by the terms of the escrow agreement. 41 Bus.Law. at 1478. Possession of the negotiable documents served notice to third parties that the documents were encumbered. Id.
 
 
 20
 The same may be said here. With Rolain's consent, Mannikko signed an agency agreement, promising to act as Norwest's agent in holding the note and perfecting Norwest's security interests. He acted as a fiduciary to Norwest, was bound to respect the agency, and did so.
 
 
 21
 Bergquist argues that, even if a debtor's attorney may serve as a creditor's 9-305 agent, the personal relationship between Rolain and Mannikko was so close that there was debtor control of the agent. He says that the two engaged in business ventures, vacationed together, and confided in each other about personal matters. Therefore, says Bergquist, Rolain controlled Mannikko and that Norwest and others were aware of that control. The argument concludes that Mannikko's possession of the note did not put others on notice of the note's encumbrance.
 
 
 22
 This is unpersuasive. Except for Rolain's claims, the record indicates nothing unusual about selecting Mannikko as Norwest's agent. All parties agreed to the arrangement. Indeed, it was desirable because Mannikko was one of the few persons whom both parties could trust to hold the note without disclosing its confidential terms. There is no remaining question of material fact.
 
 
 23
 Norwest's security interest in the Owen note was perfected.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The HONORABLE EUGENE A. WRIGHT, Senior United States Circuit Judge for the United States Court of Appeals, Ninth Circuit, sitting by designation